**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 18-20683-CR-MIDDLEBROOKS**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

vs.

**GWENDOLYN SHONTAYA BROWN, et al**

        **Defendant.**
_____/

**DEFENDANT'S MOTION FOR COMPASSIONALTE RELEASE**

    The Defendant Gwendolyn Shontaya Brown, through counsel, respectfully submits this Motion for Compassionate Release, pursuant to 18 U.S.C. § 3582 and, as grounds therefor, says:

    **1.**    **Relief Sought**

    Ms. Brown seeks a compassionate release for the purpose of reducing her chances of contracting the COVID-19 Corona virus, which has serious and potentially lethal consequences for individuals of her age and medical background.[1] She is serving her sentence at Federal Correctional Complex-Camp, Coleman, Florida ("Coleman Low"). As of July 16, 2020, 65 inmates and 12 staff members were infected with the Covid-19/Corona virus there. Just two (2) days later, July 18, 2020, 72 inmates and 13 staff members were reported as infected with the Covid-19/Corona virus there. The Bureau of Prisons overall has reported as of July 18th

---

[1] *See* CDC, *Coronavirus Disease 2019 (COVID-19), People who are at higher risk for severe illness*, March 26, 2020, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

approximately 9,875 cases and 97 inmate deaths.² *See* www.bop.gov/coronavirus.

Ms. Brown is 68 years old and her projected release date is August 25, 2023. Upon being released from prison, she will begin living in Florida City, Florida, with her daughter Mercedez Cochran and her niece Crystal Bowling, assisted frequently by her other daughter Lynda Brown. The Bureau of Prisons called Lynda Brown and obtained this information but there is no indication as to whether this release plan has been pre-approved for such placement. Ms. Brown seeks to be released to home confinement so that she can immediately begin self-quarantining at home. There, she will have her own bedroom and bathroom, and can remain isolated for not only the recommended 14-day period, but continuing through home confinement and until the pandemic subsides, so that she does not become a statistic.

2.      **Procedural Posture**

Ms. Brown submitted a request for Compassionate Release, based on her age and medical conditions, to Warden Kathy P. Lane at Coleman Low, on April 30, 2020. *See* Ex. 1 attached. The Warden denied the request on May 12, 2020, stating: "We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. However, your concern about being potentially exposed to, or possibly contracting Covid-19 does not warrant an

---

² *See* www.bop.gov/coronavirus: Due to the rapidly evolving nature of this public health crisis, the BOP will update the open COVID-19 confirmed positive test numbers, recoveries, and the number of COVID-19 related deaths daily at 3:00 p.m. The positive test numbers are based on the most recently available **confirmed lab results** involving **open cases** from across the agency as reported by the BOP's Office of Occupational Health and Safety at 11:00 a.m. each day. BOP field sites may report additional updates throughout the day. Data is subject to change based on additional reporting. … The inmate totals listed do not include inmates participating in the Federal Location Monitoring program, inmates supervised under the USPO, or being held in privately managed prisons. Additionally, the reference to the FCI Butner Low below refers to an isolation unit that is physically separated from the rest of the LSCI.

early release from your sentence. *See* Ex. 2 attached. In May, she submitted a Regional Administrative Remedy Appeal of the decision. *See* Ex. 3 attached. It was denied in June 2020, with the general statement that the "Bureau of Prisons is taking extraordinary steps to contain the spread of Covid-19 and treat any affected inmates." *See* Ex. 4 attached. Finally, Ms. Brown submitted another Regional Administrative Remedy Appeal to the Regional Administrative office on June 24, 2020. *See* Ex. 5. There has been no response to this.

    **3.**        **Health Conditions**

Ms. Brown is at heightened risk of suffering severe illness or even death if she contracts the COVID-19 virus, due to her medical history, especially her Type 2 diabetes mellitus, hypertension and heart condition, and her age, as set forth below.

    **a. Physical Health**

Ms. Brown had two (2) strokes, for which she was hospitalized in 2015. Following that, she had multiple mini strokes, through 2018. *See* D.E. 198, Physical Condition, PSI at 22-23 ¶¶ 83-87. She suffered a severe hand injury at work before that, requiring that 15 pins be inserted in her wrist, among other maladies, quoting the PSI below:

> ¶ 83.   The defendant underwent multiple left wrist surgeries following a work-related accident. Brown disclosed that heavy steel fell on her left wrist. As a result of the surgery, she has over 15 pins inserted on her wrist.
>
> ¶ 84.   According to documents received from the hospital, the defendant was admitted to Baptist Hospital on April 19, 2015 and was discharged on April 23, 2015. A computed tomography (CT) scan of the brain showed a "subacute versus chronic infarct of the right corona radiata." The defendant's magnetic resonance imaging (MRI) showed an "acute to subacute infarct of the right insula and right parietal subcortical corona radiata." The defendant was prescribed Toprol, aspirin, Celexa, Lipitor, and Lovenox. According to the documents the defendant is allergic to penicillin.

¶ 85. In 2016, the defendant was involved in a car accident. The defendant reported that she was hospitalized for a week at Kendall Regional Medical Center in Miami as a result of the car accident.

¶ 86. Additionally, the defendant stated she has chronic medical issues. She recalled she has **hypertension**, high cholesterol, **diabetes**, muscle spasms, rheumatoid arthritis, chest pains and a rapid heart rate.

¶ 87. On July 3, 2018, the defendant was discharged from Baptist Hospital and was diagnosed with **chest pain, hypertension, history of stroke, elevated d-dimer, chest pain, and hypertension**. She was prescribed ibuprofen, aspirin, atorvastatin, and metoprolol.

D.E. 198: 22-23 ¶¶ 83-87.

Ms. Brown suffered a slip and fall while serving her sentence at Coleman in October 2019. She was taken to Leesberg General Hospital for evaluation and treatment. The hospital records indicate that she incurred a closed head injury with a head contusion and cervical sprain. *See* Sealed Ex. A. Medical records will be filed under seal, due to confidentiality concerns. For months that followed, Ms. Brown experienced headaches and neck pain. She had a knot to the back of her head and tenderness on palpation. *See* BOP Health Services Clinical Encounter (1/9/20). *See* Sealed Ex. B. In February 2020, she was assessed as having anxiety disorder, cervicalgia, essential hypertension, major depressive disorder-recurrent, osteoarthritis of the knee and **Type 2 diabetes mellitus**. *See* Sealed Ex. C, BOP Health Services Clinical Encounter (2/6/20). In March 2020, she reportedly suffered abnormal findings in blood chemistry, acute nasopharyngitis and **Type 2 diabetes mellitus**. *See* Sealed Ex. D, BOP Health Services Clinical Encounter (3/12/20).

    b.    **Mental Health**

The PSI stated the following mental health problems:

89. According to the defendant, in 2008, she saw a psychiatrist in Coral Gables, Florida, because she thought she was "hearing names."

> Additionally, the defendant noted that two years ago she was prescribed Ambien, which treats insomnia, but did not recall the name of the physician who prescribed the medication.
>
> 90. Medical documents from Baptist Hospital revealed the defendant saw a psychiatrist on April 22, 2015, because she said "Doctor, I feel depressed." The defendant reported that she was feeling slightly depressed prior to her "right hemispheric stroke and left-sided weakness." She reported feeling a sense of worthlessness, hopelessness, having difficulty concentrating, and unable to focus on daily activities. She was diagnosed with mood disorder and was prescribed Celexa and Restoril.

D.E. 198: 23 ¶¶ 89-90.

### 4. Offense Conduct

Ms. Brown and five (5) co-defendants were charged in a 19-Count Indictment with conspiracy to possess with intent to distribute cocaine and cocaine base, from 2015-2018 (Count One), accompanying substantive counts as to specific defendants and dates, and a forfeiture count for property owned by Ms. Brown. *See* D.E. 3. She pleaded guilty to the counts in which she was charged (Counts 1, 5 and 8). The property was subsequently seized by the government.

The nature of her participation in the offense was as a facilitator. She answered telephone calls and responded to requests to communicate other's requests for drugs, primarily from her son/codefendant Johnny Martin. She did not recruit accomplices. She did not claim any right to a larger share of the fruits of the crime. In fact, the PSI states the informant paid $600 to Mr. Martin on March 15, 2017, and paid Ms. Brown $40. *See* D.E. 198: 8-9 ¶ 19. This dramatic difference in the amount of money paid demonstrates the miniscule share that she received. She did not participate in planning or organizing the offense. The nature and scope of her activity was as a go-between. Ms. Brown did not exercise control or authority over others.

### 5. Sentencing

This Court sentenced Ms. Brown to 70 months' imprisonment, followed by 5 years'

supervised release on January 16, 2019. *See* D.E. 186. Her projected release date is August 25, 2023, according to the BOP Inmate Locator (www.bop.gov). She was arrested on September 5, 2018, and has been in continuous custody since then. She has completed 22 months of the 59.5 months she is projected to serve. Ms. Brown has been using her time effectively working and taking classes, as reflected in the transcript attached. *See* Ex. 6, Individualized Reentry Plan (02-06-2020).

6. Assistant U.S. Attorney Rilwan Adeduntan has indicated that the government objects to the relief here sought.

## MEMORANDUM OF LAW

### I. LEGAL STANDARD

The compassionate release provision of 18 U.S.C. § 3582(c), as amended by the First Step Act of 2018, provides, in pertinent part, that "the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . if it finds that extraordinary and compelling reasons warrant such a reduction" and if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A)(i); First Step Act of 2018, Pub. L. 115-391, § 603(b), 132 Stat. 5194, 5239. Before granting compassionate release, the Sentencing Commission directs courts to consider when a defendant poses "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13.

The PSI assigned one (1) criminal history point to Ms. Brown for retail theft at Walmart in 2015. *See* PSI, D.E. 198: 18 ¶ 64. She pled guilty and was sentenced to time served, *i.e.*, two (2)

days. She pled no contest to a petty offense, obstructing a police officer, also in 2015. Adjudication was withheld and she successfully completed the 3-month probationary sentence imposed. She has a remote criminal history for drug offenses but, then, she was much younger. With age, comes maturity and sensibility. Ms. Brown is no longer interested in and not capable of her previous endeavors, given her age, health and the discipline she has experienced in the almost two (2) years she has been in prison. Having served two (2) years in federal prison, approaching her 69th birthday, she has learned to respect and abide by the law. She has taken classes in Alternative to Violence, as well as "Godly Leadership," Re-entry Faith-Based Threshold, Microsoft, Re-entry Planning, Life Without Limbs and typing. *See* Ex. __, Individualized Reentry Plan (02-06-2020). She has a new outlook on and approach to life. Ms. Brown is a product of her environment, working through the hand she was dealt. She now faces a greater obstacle than the poverty and disfunction she experienced growing up and into maturity. Given the seriousness of the Covid-19/Corona Virus, coupled with the time she has spent in prison, she will be in isolation and obediently follow the rules. She has learned a great deal of self-discipline and appreciation for freedom and responsibility.

## II. DISCUSSION

### A. Exhaustion of Administrative Remedies

The Parties agree that Defendant has exhausted administrative remedies, as demonstrated in paragraph no. 2 above. See Ex. 1-5. Ms. Brown has gone above and beyond in her effort, and the Court now has authority to entertain this motion.

### B. Compassionate Release Based on Defendant's Medical Conditions

The Center for Disease Control lists these three (3) conditions as placing people at higher risk for the deadly Covid-19 virus. *See Centers for Disease Control, People Who Are at Higher*

7

*Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (listing diabetes, hypertension, and serious heart conditions, as COVID-19 risk factors). Application Note 1 of Section 1B1.13 of the Sentencing Guidelines describes "extraordinary and compelling reasons" for release as including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons." The Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes an "extraordinary and compelling reason" justifying compassionate release. U.S.S.G. § 1B1.13, n. 1.

Ms. Brown suffers such extraordinary and compelling reason sufficient to justify release, under Section 3582(c)(1)(A) and U.S.S.G. § 1B1.13, due to her **diabetes, hypertension** and **heart condition**. The COVID-19 virus is highly contagious and is rapidly spreading throughout the prisons. *See United States v. Williams*, 2020 WL 1751545, at *2 (N.D. Fla. Apr. 1, 2020); *United States v. Campagna*, 2020 WL 1489829, at *2 (SDNY Mar. 27, 2020) *Castillo v. Barr*, 2020 WL 1502864, at *2 (C.D. Cal. Mar. 27, 2020); *United States v. Kennedy*, 2020 WL 1493481, at *2-3 (E.D. Mich. Mar. 27, 2020); *United States v. Garlock*, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020)).

Ms. Brown's medical conditions place her at increased risk of severe illness if she contracts COVID-19. *See United States v. Rodriguez*, No. 2:03-cr-271, Doc. # 135 at 2 (E.D.P.A. Apr. 1, 2020) (granting compassionate release because for a diabetic inmate, "nothing could be more extraordinary and compelling than this pandemic"). As the COVID-19 pandemic continues to pose a substantial threat to individuals across this country, with thousands of Americans dying each week, Ms. Brown will be able to substantially reduce her risk of

8

contracting this virus if she is permitted to self-quarantine in her daughter's home. Based on the totality of circumstances, including the nature of her crime and remote criminal history, she is not a danger to the safety of any other person or to the community, and thus the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of her release.

## **CONCLUSION**

Based on the foregoing, Ms. Brown respectfully requests that the Court grant her request for a compassionate release.

Respectfully submitted,

FAITH MESNEKOFF, P.A.

BY:  *s/Faith Mesnekoff*
Faith Mesnekoff
Florida Bar No. 390800
9100 S. Dadeland Blvd., Suite 1500
Miami, Florida 33156
Tel: 786-497-7071
E-mail: Faith@MesnekoffLaw.com

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on July 20, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

 *s/Faith Mesnekoff*
Faith Mesnekoff