**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 18-20683-CR-MIDDLEBROOKS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

GWENDOLYN SHONTAYA BROWN, *et. al.*,

    Defendant.

_____/

**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE**

THIS CAUSE is before the Court upon a Motion for Compassionate Release filed on July 20, 2020 by Defendant Gwendolyn Shontaya Brown ("Defendant"). (DE 278). The Government responded in opposition on July 28, 2020. (DE 282). Defendant has not yet filed a reply. For the following reasons, Defendant's Motion is granted.

**I.    BACKGROUND**

In the present Motion, Defendant seeks compassionate release to lessen her chances of contracting the COVID-19 virus, which has serious and potentially lethal consequences for individuals of her age and medical background. Defendant is currently incarcerated at the low-security facility of the Federal Correctional Complex-Camp in Coleman, Florida ("Coleman Low"). (DE 278 at 1). Coleman Low currently has the highest number of positive inmate cases out of the four facilities in the Coleman Complex-Camp, the highest of any federal detention facility

in the State of Florida, and fourth highest in the nation. *See COVID-19 Cases*, Federal Bureau of Prisons (July 27, 2020), https://www.bop.gov/coronavirus/.[1]

Defendant has been in custody for nearly two years since her arrest on September 5, 2018. (DE 278 at 6). Defendant was one of six defendants arrested in relation to a drug distribution ring in South Miami-Dade County. (Presentence Investigation Report "PSI" ¶4). Defendant contributed to multiple narcotics sales by receiving phone calls, facilitating drug transactions at her residence, and directing drug users to visit a "trap house" to purchase narcotics from her co-defendants. (*Id.* at ¶¶ 7, 19). She pleaded guilty to conspiracy to possess with intent to distribute 28 grams or more of cocaine base in violation of 21 U.S.C. § 846 (Count 1) and possession with intent to distribute a detectable amount of cocaine (Count 5) and cocaine base (Count 8) in violation of 21 U.S.C. § 841(a)(1). (DE 186 at 1; DE 278 at 5). To date, Defendant has served 22 months of the 59.5-month sentence she is projected to serve, giving her a projected release date of August 25, 2023.[2] (DE 278 at 2, 6).

At sentencing, I ordered that Defendant should be assigned to a facility "that can address her medical needs." (DE 186 at 2). Defendant is 68 years old and suffers from Type 2 diabetes mellitus, chest pain, high cholesterol, hypertension, and a heart condition. (DE 278 at 3-4). She has experienced two strokes requiring hospitalization and alleges that she experienced multiple "mini-strokes" between 2015 and 2018. (PSI ¶ 84).

---

[1] Due to the rapidly evolving nature of this public health crisis, this statistic reflects BOP data as of July 28, 2020. The BOP reports the number of COVID-19 confirmed positive test numbers, recoveries, and COVID-19 related deaths daily at 3:00 p.m

[2] *See BOP Inmate Locator*, available at www.bop.gov/inmateloc/ (last visited July 28, 2020).

## II.     LEGAL STANDARD

The compassionate release provision of 18 U.S.C. § 3582(c), as amended by the First Step Act of 2018, provides, in pertinent part, that "the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . if it finds that extraordinary and compelling reasons warrant such a reduction" and if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A)(i); First Step Act of 2018, Pub. L. 115-391, § 603(b), 132 Stat. 5194, 5239. Before granting compassionate release, the Sentencing Commission directs the court to consider whether a defendant poses "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13.

## III.    DISCUSSION

### A. Exhaustion of Administrative Remedies

The Parties do not dispute that Defendant has exhausted administrative remedies. On April 30, 2020, Defendant submitted a request for compassionate release based on her age and medical conditions to Warden Kathy P. Lane ("Warden Lane") at Coleman Low. (DE 278 at 2). Defendant's request was denied on May 12, 2020. (*Id.*). Her Regional Administrative Remedy Appeal of Warden Lane's decision was filed in May, and subsequently denied in June. (*Id.* at 3). Defendant filed a second Regional Administrative Remedy Appeal on June 24, 2020, to which the Regional Administrative office has yet to respond. (*Id.*). Accordingly, Defendant has exhausted administrative remedies and thus, this Court may consider the requested relief. *See* 18 U.S.C. § 3582(c)(1)(A).

### B. Compassionate Release Based on Defendant's Medical Conditions

Application Note 1 of Section 1B1.13 of the Sentencing Guidelines describes "extraordinary and compelling reasons" for release as including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons." The Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes an "extraordinary and compelling reason" justifying compassionate release. U.S.S.G. 1B1.13.

On March 26, 2020, Attorney General William Barr ("AG Barr") issued guidance to the BOP regarding when an inmate should be released into home confinement due to COVID-19. Although this advice is not specifically directed to federal judges considering motions for compassionate release, it is instructive in this context. The memorandum provides that:

> Many inmates will be safer in BOP facilities where the population is controlled and there is ready access to doctors and medical care. But for some inmates, home confinement might be more effective in protecting their health. In addressing which inmates should be granted home confinement pursuant to this Memorandum, you are to consider the totality of the circumstances for each individual inmate, the statutory requirements for home confinement, and the following non-exhaustive list of discretionary factors:
>
> - The age and vulnerability of the inmate to COVID-19, in accordance with the Centers for Disease Control and Prevention (CDC) guidelines;
> - The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities;
> - The inmate's conduct in prison, with inmates who have engaged in violent or gang-related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment under this Memorandum;
> - Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety . . .;

- The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community . . . .[3]

As an initial matter, while perhaps some individuals are safer while incarcerated, this is certainly not the case at Coleman Low. According to the CDC, 4,280,135 individuals have contracted the COVID-19 virus in the United States as of the writing of this Order.[4] The population of the United States is approximately 330,029, 420.[5] This means that approximately 1.3% of the United States population has contracted the COVID-19 virus. Even by the most conservative estimates, the 8.5% infection rate at Coleman Low is nearly 6.5 times that of the general public.[6]

Further, given the realities of prison life, it is not necessarily clear than any individual is safer from the virus while incarcerated. "Courts around the country have recognized that the risk of COVID-19 to people held in jails and prisons 'is significantly higher than in the community, both in terms of risk of transmission, exposure, and harm to individuals who become infected.'"[7] In recent testimony before the Senate Judiciary Committee, BOP Medical Director Dr. Jeffrey

---

[3] *See* Memorandum for Director of Bureau Prisons, William Barr, Attorney General, Prioritization of Home Confinement as Appropriate in Response to the COVID-19 Pandemic (Mar. 26, 2020).

[4] Ctrs. for Disease Control and Prevention, *Cases in U.S.*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited June 28, 2020).

[5] *U.S. and World Population Clock*, U.S. Census Bureau, https://www.census.gov/popclock/ (last visited June 28, 2020)

[6] *COVID-19 Cases*, Federal Bureau of Prisons (July 27, 2020), https://www.bop.gov/coronavirus/.

[7] *See United States v. Williams,* 2020 WL 1751545, at *2 (N.D. Fla. Apr. 1, 2020) (quoting *Basank v. Decker*, --- F. Supp. 3d ---, 2020 WL 1481503, at *3 (S.D.N.Y. March 26, 2020), and citing *United States v. Harris*, --- F. Supp. 3d ---, 2020 WL 1503444, at ¶ 7 (D.D.C. Mar. 27, 2020)); *United States v. Campagna*, 2020 WL 1489829, at *2 (S.D.N.Y. Mar. 27, 2020); *Castillo v. Barr*, 2020 WL 1502864, at *2 (C.D. Cal. Mar. 27, 2020); *United States v. Kennedy*, 2020 WL 1493481, at *2-3 (E.D. Mich. Mar. 27, 2020); *United States v. Garlock*, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020)).

Allen commented that "[a]symptomatic transmission has caused particular challenges[.] It illustrates the infectivity of the disease and difficulty controlling it in correctional environments."[8] Particularly in Coleman Low where there is already such a high rate of infection, difficulty in controlling transmission is extremely concerning.

However, incarceration within Coleman Low is not, in and of itself, grounds to grant compassionate release. Therefore, I must evaluate other relevant considerations to determine whether compassionate release is appropriate. In so doing, I am guided, in part, by the factors laid out by AG Barr.

1. **Age and Vulnerability**

The Court has been aware of Defendant's medical ailments and needs at least since sentencing. (*See* DE 186 at 2). That is why I ordered she be placed in a detention facility equipped to meet her medical needs. (*Id.*). Defendant is 68 years old and suffers from Type 2 diabetes mellitus, chest pain, high cholesterol, hypertension, and a heart condition. (DE 278 at 3-4). The CDC has identified a heightened level of risk for older adults and individuals with certain underlying medical conditions.[9] Specifically, individuals with Type 2 diabetes mellitus and serious heart conditions, like the Defendant, are proven to have increased risk of severe illness or death if they contract COVID-19. *Id.* Additionally, individuals with hypertension, like the Defendant,

---

[8] Dave Minsky, *Nearly all inmates at Lompoc FCI tested positive for coronavirus, most asymptomatic*, LOMPOC RECORD, June 5, 2020, https://lompocrecord.com/news/local/crime-and-courts/nearly-all-inmates-at-lompoc-fci-tested-positive-for-coronavirus-most-asymptomatic/article_f3fb06d7-f231-52b3-8f89-f21f11b73974.html.

[9] Ctrs. for Disease Control and Prevention, *People Who Are at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited June 28, 2020) ("[T]he risk for severe illness from COVID-19 increases with age, with older adults at highest risk. Severe illness means that the person with COVID-19 may require hospitalization, intensive care, or a ventilator to help them breathe, or they may even die.").

might be at an increased risk for severe illness from COVID-19. *Id.* The CDC advises that individuals with any of these conditions should "[limit] interactions with other people as much as possible." *Id.* While the Government acknowledges Defendant's many medical ailments, it argues that Defendant, a 68-year old with underlying conditions, has a "speculative" chance of contracting COVID-19. (DE 282 at 4-5). The Government also argues that if Defendant contracted the virus, she would have ample self-care opportunities at Coleman Low. (*Id.*) I find that the far safer and more conscientious course of action is to remove her from the incarcerative environment so as to reduce her chances of contracting the virus in the first place.

### 2. Security Level of the Facility

As previously discussed, Defendant is currently held at Coleman Low, a low security facility.[10] Defendant is currently assigned to Camp AM Food Service. (DE 278-1 at 17). This assignment reflects a decision by the BOP that Defendant can handle the level of freedom permitted within a low-security environment.

### 3. Conduct in Prison

As both Parties note, Defendant has exhibited commendable behavior while at Coleman Low, receiving no disciplinary infractions. (DE 278-1 at 17; DE 282 at 10). Defendant has successfully completed multiple classes during her two years of incarceration, including classes in "Re-Entry Planning," "Alternative to Violence," and "Godly Leadership." (DE 278-1 at 17). It appears that Defendant has made a good use of her time while incarcerated, which weighs in favor of granting release.

### 4. Verifiable Re-Entry Plan

---

[10] It is possible that Defendant is housed within the minimum-security camp within Coleman Low, as suggested by the Government's statement that "every inmate at the female Camp [has] been tested, including the Defendant." (DE 282 at 7).

Upon release, Defendant will live with her daughter, Mercedez Cochran, and her niece, Crystal Bowling, at Defendant's family home in Florida City, Florida. (DE 278 at 2). She will receive frequent assistance from her other daughter, Lynda Brown. (*Id.*). There, Defendant will have her own bedroom and bathroom, where she can quarantine and remain isolated from the growing COVID-19 threat while on home confinement. (*Id.*) Although BOP called Defendant's daughter, Lynda Brown, to obtain this information, Defendant's counsel is not clear whether Defendant's release plan has been approved. (*Id.*).

5. **Crime of Conviction and Danger to the Community**

Taking into account all of these factors, I find that Defendant has demonstrated extraordinary and compelling reasons justifying her immediate release under Section 3582(c)(1)(A) and U.S.S.G. § 1B1.13. Defendant's preexisting medical issues place her at increased risk of severe illness if she contracts COVID-19. *See United States v. Rodriguez*, No. 2:03-cr-271, DE 135 at 2 (E.D.P.A. Apr. 1, 2020) (granting compassionate release because for a diabetic inmate, "nothing could be more extraordinary and compelling than this pandemic"). Further, based on Defendant's relatively minor role in the crime, I find that she is not a danger to the safety of any other person or to the community. Defendant's involvement was limited receiving phone calls, facilitating drug transactions at her residence, and directing drug users to visit a "trap house" to purchase narcotics from her co-defendants. (*Id.* at ¶¶ 7, 19). Further, Defendant's crime of conviction is not a violent one. While I do find it troubling that Defendant engaged in far from acceptable behavior when she bragged about verbally and physically accosting a neighbor for cooperating with the police (PSI ¶ 16), Defendant's consistent good behavior in prison and her letter to the Court are persuasive evidence that Defendant accepts responsibility for her

wrongdoing and has a different perspective of her prior actions. In her letter to the Court prior to sentencing, Defendant stated:

> I am writing this letter to the Court to apologize for my actions in this case. I now realize what I did was very wrong and a serious crime. I am very very sorry. I will never get involved in the drug business ever again. I realize how dangerous drugs are to the community and the people in it. Thank you for your attention.

(PSI ¶ 43).

## IV.   CONCLUSION

Based upon the foregoing, and after careful consideration of the Parties' written submissions, the record, and applicable law, I find that it is appropriate to grant Defendant's request for compassionate release. Accordingly, it is hereby

**ORDERED and ADJUDGED** that:

1. Defendant Gwendolyn Shontaya Brown's Motion for Compassionate Release (DE 278) is **GRANTED**.

2. Defendant's sentence of imprisonment is hereby **REDUCED** to **TIME SERVED**, effective immediately.

3. To the extent that Defendant's release plan has not yet been approved by Probation, Defendant's counsel shall work with Probation to create an approved plan of release as quickly as possible. **It is the court's expectation that finalization of this release plan will not pose an obstacle to Defendant's immediate release from BOP custody.**

4. Defendant's counsel shall file status reports each week from the date of this order giving a brief summary of all progress made towards creating a compliant plan of release.

5. Upon release from imprisonment, Defendant shall comply with all standard conditions of supervised release with the following additional special condition:

9

> Home Detention with Electronic Monitoring - The defendant shall participate in the Home Detention Electronic Monitoring Program for a period of **THIRTY-SEVEN (37) MONTHS**. During this time, the defendant shall remain at her place of residence except for employment, religious observances, medical appointments and other activities approved in advance and provide the U.S. Probation Officer with requested documentation. The defendant shall maintain a telephone at her place of residence without 'call forwarding', 'call waiting', a modem, 'caller ID', or 'call back/call block' services for the above period. The defendant shall wear an electronic monitoring device and follow the electronic monitoring procedures as instructed by the U.S. Probation Officer. The defendant shall pay for the electronic monitoring equipment at the prevailing rate or in accordance with ability to pay.

All previous conditions imposed in the judgment and commitment order remain in full force and effect. (DE 186).

6. Given the possibility that Defendant may have contracted the virus before release, Defendant should self-isolate within her home for 14 days upon release.

7. Defendant must report in person to the United States Probation Office within 72 hours of her release.

**SIGNED** in Chambers at West Palm Beach, Florida, this 29th day of July, 2020.

_____
DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE